Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo CA 94402
(650) 781-0025
jake@blockleviton.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARA YAGHSIZIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM and OLUYEMI OKUPE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ara Yaghsizian ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon personal knowledge as to Plaintiff, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of documents filed by Defendant Hims & Hers Health, Inc. ("Hims" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), research reports issued by securities and financial analysts, press releases issued by Defendants, media and news reports, and other publicly available information about Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE AND SUMMARY OF THE ACTION**

1. This is a securities fraud class action on behalf of all those who purchased, or otherwise acquired, Hims common stock during the period from April 29, 2025 through June 23, 2025, inclusive (the "Class Period"), who were damaged thereby (the "Class"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10 b-5.

2. Hims is a U.S.-based telehealth company that offers online access to health consultations and treatments, focusing on conditions such as weight loss, acne, sexual wellness, and mental health.

3. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, including that: (1) the communication between Hims and the pharmaceutical company Novo Nordisk A/S ("Novo") would facilitate a long-term collaboration that would ensure continued access to the weight-loss drug Wegovy for Hims subscribers; (2) Novo approved of Hims' offerings of compounded semaglutide products under the "personalization" exception; (3) branded Wegovy would be offered alongside compounded semaglutide options on the Hims platform, thereby expanding user choice; and (4) Defendants made positive statements about

the Novo partnership and Hims users' ongoing access to Wegovy alongside compounded semaglutide products.

4. On June 23, 2025, Novo—the manufacturer of the blockbuster weight-loss drug Wegovy and previous partner of Hims—announced that it was terminating its collaboration with the Company. Novo accused Hims of breaking the law by continuing to sell compounded versions of semaglutide, the key ingredient in Wegovy, alongside Novo's branded products. In a statement, Novo stated it was terminating its partnership with Hims because "Hims & Hers . . . has failed to adhere to the law which prohibits mass sales of compounded drugs under the false guise of 'personalization.'"

5. On this news, the price of Hims common stock declined by $22.24 per share, or over 34%, from $64.22 per share on June 20, 2025 to close at $41.98 per share on June 23, 2025.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 1367, and pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa.

8. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

10. In connection with the acts, omissions, conduct, and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate

commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

11. Plaintiff, as set forth in the accompanying certification, which is incorporated by reference herein, purchased Hims & Hers Health, Inc. common stock during the Class Period and has been damaged thereby.

12. Defendant Hims & Hers Health, Inc. is a U.S.-based telehealth company headquartered in San Francisco, California. The Company's stock trades on the New York Stock Exchange under the ticker symbol "HIMS."

13. Defendant Andrew Dudum ("Dudum") has served as Chief Executive Officer ("CEO") and as a member of the board of directors of Hims at all relevant times. He also co-founded the Company.

14. Defendant Oluyemi Okupe ("Okupe") has served as the Chief Financial Officer ("CFO") of Hims at all relevant times.

15. Collectively, Defendants Dudum and Okupe are referred to throughout this complaint as the "Individual Defendants."

16. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected.  Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

17. Hims and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

18. Hims is a U.S.-based telehealth company that connects users with licensed healthcare professionals who offer virtual consultations and prescribe medications tailored to a range of health and wellness goals, including hair regrowth, sexual health, and weight loss.

19. A key component of Hims' weight loss offerings was compounded semaglutide custom-made medications that mimic the effects of brand-name drugs like Ozempic and Wegovy at a lower cost.

20. Under federal law, compounding pharmacies are permitted to produce and sell compounded versions of a drug in two situations: 1) when the Food and Drug Administration ("FDA") has declared a shortage of that drug; and 2) when a patient requires a customized version due to an adverse reaction or intolerance to the brand-name drug (a practice known as "personalization"). Compounded drugs are prepared by pharmacists and are not reviewed by the FDA for safety or effectiveness. Once a shortage ends, compounded versions may only be produced in limited cases involving individualized medical need.

21. The FDA first declared a shortage of the weight-loss drugs Ozempic and Wegovy in August 2022. On February 21, 2025, the FDA announced that the shortages had been resolved and ordered all compounding pharmacies to cease production of compounded semaglutide by April 2025. Hims, however, continued to offer compounded semaglutide to its users under the personalization exception.

22. In the lead up to the Class Period, Hims reported strong fourth-quarter results for 2024, with revenue growing 95% year over year. Full-year revenue rose 69% to $1.5 billion, and the Company's subscriber base grew 2.2 million, marking a 45% increase from the previous year. However, Hims' offerings of compounded weight-loss drugs represented a significant part of its business. Following the FDA's February announcement that the shortages of Wegovy and Ozempic

had ended—and that compounding of semaglutide medications would no longer be permitted after May 2025—analysts expressed concerns about the potential impact on Hims' weight-loss revenue.

23. In response to these concerns, Hims announced a "long-term collaboration" with Novo Nordisk that would allow consumers to directly purchase Wegovy through the Hims platform and supplement its continued offerings of compounded semaglutides.

24. Throughout the Class Period, the Company misled investors to believe that its partnership with Novo was based on extensive engagement and communication between the two companies, forming the basis for a long-term collaboration that would ensure continued access to Wegovy for Hims users, that its compounded semaglutide offerings under the "personalization" exception were approved of by Novo, and that both the branded and compounded versions of the drug could be offered on its platform concurrently.

25. Despite representing to investors that "Branded Wegovy will be an additional option for subscribers and will complement our . . . personalized semaglutide options" and that Novo and Hims were "aligned philosophically with . . . use of that compounding exemption," Novo did not in fact approve of Hims' use of the personalization exception in offering compounded semaglutides to its users and would prove unwilling to offer Wegovy concurrently with these compounded options. On June 23, 2025, Novo Nordisk announced the termination of its partnership with Hims, accusing Hims of improperly selling and promoting unapproved, compounded versions of Wegovy.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

26. The Class Period starts on April 29, 2025, when Hims announced its partnership with Novo Nordisk. The Company reported:

> Hims & Hers Health, Inc. (NYSE: HIMS) today announced ***a long-term collaboration with Novo Nordisk designed to make proven obesity care and treatments more accessible, more affordable, and more connected for millions of Americans***.
>
> * * *

> *The companies are also developing a roadmap that combines Novo Nordisk's innovative treatments with Hims & Hers' ability to scale access to quality care, aiming to improve long-term outcomes for more people, more affordably* . . . This new offering builds on Hims & Hers' existing suite of weight loss solutions and provides access to all dose strengths of Wegovy® in a high-quality pen for self-pay patients. *The platform will continue to offer access to other medications, oral kits, protein, nutrition kits, and clinically-backed care plans*, giving patients more ways to start and sustain their health journey based on their needs, goals, and eligibility.

27.     During an earnings call on May 5, 2025, Defendant Dudum further touted the partnership with Novo, stating:

> Weight loss is another example that demonstrates how execution of our vision can translate into rapid scale. In just 18 months, it has become one of our largest specialties. We've added liraglutide earlier this year. *And now through our new collaboration with Novo Nordisk, we're expanding access to branded Wegovy to bring subscribers on our platform an even broader range of choice. Branded Wegovy will be an additional option for subscribers and will complement our oral kit offering, liraglutide and personalized semaglutide options*.
>
> Teaming up with Novo Nordisk is a pivotal milestone. We are pairing our customer-first platform with Novo's medicines, reaching more people and helping them stay on track with their goals. *This collaboration also signals something important, trust from a major pharmaceutical leader, and it sets the blueprint for future partnerships that can expand both our reach and our relevance*.

28.     During this same earnings call on May 5, 2025, an analyst noted a "natural tension between the dispensing of the personalized product [and] the commercial Wegovy that you guys are selling," asking "was there any like interaction or any discussion around like a ratio of the dispensing of the personalized products versus the commercial product? And Andrew, I'd just be -- I'd really be interested in the background. Is there any risk that like Novo would ever pull the

commercial relationship with you guys if personalized kind of sold too well?" Defendant Dudum responded:

> *I think there's an alignment that both the regulation allows for it, and we believe there's a need, whether or not there's total agreement with regard to how much of that should be available to what types of consumers*. Will our organizations ever align on that perfectly? Probably not. But I think the reality is, and I think everybody is stepping back and realizing this reality, is that we have millions of patients on Hims & Hers platform. We have 10,000 to 15,000 patients who are treating every single day, and they are looking for options. And so in a world where great medicine is trying to find the patient that needs their option, it makes sense to work with Hims & Hers. And *I think we have a responsibility to do that in the right way, to do it in a respectful way to play by the book and to respect all parties. But I think that's where we, as a distribution platform, can really bring the ecosystem together whether these players traditionally fight each other or compete with each other, might not matter if ultimately at the end of the day, we have millions of patients coming to us every day looking for choice, and we want to make sure they have the broadest choice possible*. That type of alignment, it's something that everybody, I think, can agree to. It's something that benefits everybody. And *I think as long as there's trust between all organizations at the way in which those patients receive care is independent and driven by clinical best practices, then I hope that we're able to have a really long and tenured relationship with many partners like this*.

29.     Later on in the call, Defendant Dudum doubled down on the supposed alignment between Hims and Novo in regard to the prescription of personalized semaglutide, stating:

> On the commercial doses that transition to noncommercial, I don't think that's something we disclose, unfortunately, Daniel. **On the personalized semaglutide standpoint, one of the**

*things that we did talk about with Novo early is just what we believe is appropriate use of personalization and aligned philosophically with what our providers believe is that clinical necessities. So there is an alignment for what we believe to be blue chip use of that compounding exemption.*

30.     On May 15, 2025, Hims presented at the 53rd Annual JPMorgan Global Technology, Media and Communications Conference. At the conference, an analyst asked Defendant Okupe to "walk through the recent partnership announcement with Novo. What was the logic from your perspective, and how it came together?" Defendant Okupe responded:

> Yes. So I think that one of the core principles behind any specialty that we operate in is bringing consumers choice. And so I think what we've observed, particularly for a specialty like weight that impacts over 100 million people in the U.S. alone, the ability to bring choice to consumers is something that's fundamentally important.
>
> * * *
>
> ***When we look at the collaboration that we did with Novo, the executive team spent quite a bit of time engaging and talking.*** What we observed on the HIMS side was, fundamentally, we're going after the same thing, right? And that is, how do you resolve a very sensitive condition for millions of people and overall improve that experience? How do you effectively help them in their weight loss journey, which fundamentally impacts other things such as their cardiovascular health, potentially their metabolic health as well, and really transform that experience to ensure that they can manage through side effects while also fundamentally achieving their goals?
>
> ***As the teams talked more and more, it became very clear that the principles behind both organizations and what we were both after, fundamentally, we're going after the same thing.*** And so with that, we sought to collaborate again to fundamentally offer more choice to consumers on the platform. We also have a keep moment where commercially available dosages of semaglutide will roll off the platform in May. The ability to provide another option for users that are on the platform today as well as users that may come to the platform in the

future is something that we're very excited by. And we're seeing a lot of success with the branded Wegovy in the platform as well.

31. The analyst followed up, asking: "do you expect to be able to offer compounded semaglutide after next week? And then how many of your patients do you expect to move from compounded weight loss drugs to more branded drugs?" Defendant Okupe stated:

Yes. So I think from a personalization capability, I think that those regulations have been in place for a decade. ***And I think many players in the pharmaceutical industry are also acknowledging the fact that there is a need for personalization. And so I think we're going to be very thoughtful around how we offer that on a go-forward basis***.

But I think, again, when we point back to some of the things that are unique to Hims & Hers, the data that we have to fundamentally pair a user with the right treatment I think is something that's very unique at the type of scale that we have. And so our ability to see a user and identify, based upon their profile, is an oral treatment right for them, is it personalized semaglutide, is it the branded pens, and triage that, I think, is something that, again, is a very powerful thing. When you step back and look at what is the incentive of the platform as well as the incentive of other players in the ecosystem like a Novo, it is really to give a consumer a delightful experience and have that consumer benefit and ultimately keep coming back and utilizing the product for years and years to come. And so our ability to identify what product is the consumer likely to have success with, I think, is something that gives us the power to confidently do that.

32. The statements referenced above in ¶¶25-30 were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's business, which were known to Defendants or recklessly disregarded by them as follows:

    a) The communication between Hims and Nova was insufficient to ensure that their partnership would provide long-term access to Wegovy for Hims users;

    b) Novo had not agreed to Hims' offerings of compounded semaglutide options;

        c)     Novo would be unwilling to offer Wegovy concurrently with compounded semaglutide drugs;

        d)     that, based on the foregoing, Defendants lacked a reasonable basis for their positive statements about their partnership with Novo and Hims users ability to access the weight loss drug Wegovy through the Hims platform.

33. On June 23, 2025, Novo Nordisk announced the termination of its partnership with Hims, alleging that Hims was improperly selling and promoting unapproved, compounded versions of Wegovy and had "failed to adhere to the law which prohibits mass sales of compounded drugs" under the "false guise" of personalization. Novo accused the Company of "deceptive" marketing that put patient safety at risk.

34. On this news, the price of Hims common stock declined by $22.24 per share, or over 34%, from $64.22 per share on June 20, 2025 to close at $41.98 per share on June 23, 2025.

## ADDITIONAL SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter in that they knew the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market price of Hims' common stock as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Hims, their control over, and/or receipt or modification of, the Company's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning Hims, participated in the fraudulent scheme alleged herein.

36. As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**LOSS CAUSATION/ECONOMIC LOSS**

37. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

38. On June 23, 2025, Novo Nordisk announced the termination of its partnership with Hims, alleging that Hims was improperly selling and promoting unapproved, compounded versions of Wegovy. On this news, the price of Hims common stock declined by $22.24 per share, or over 34%, from $64.22 per share on June 20, 2025 to close at $41.98 per share on June 23, 2025.

39. The decline in Hims' stock price is directly attributable to the Novo's announcement regarding the termination of its partnership with Hims.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**

**FRAUD-ON-THE-MARKET DOCTRINE**

40. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b) The omissions and misrepresentations were material;

    c) The Company's common stock traded in efficient markets;

    d) The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e) Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

41. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

42. The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

43. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Hims & Hers, Inc. common stock between April 29, 2025 through June 23, 2025, inclusive. Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

46. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a) Whether Defendants violated the Exchange Act;

    b) Whether Defendants omitted and/or misrepresented material facts;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e) Whether the price of the Company's stock was artificially inflated; and

f) The extent of damage sustained by Class members and the appropriate measure of damages.

47. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

48. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
### For Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

50. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii)

engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

53. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II
### For Violation of §20(a) of the Exchange Act
### (Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. Defendants acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading. The Company controlled the Individual Defendants and all of its employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

C. Awarding Plaintiff and other members of the Class their reasonable costs and expenses in this litigation, including attorneys' fees, experts' fees and other reasonable costs and disbursements; and

D. Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

| | |
|---|---|
| June 25, 2025 | Respectfully submitted, |
| | */s/ Jacob A. Walker*<br>Jacob A. Walker (SBN 271217)<br>**BLOCK & LEVITON LLP**<br>400 Concar Drive<br>San Mateo CA 94402<br>(650) 781-0025<br>jake@blockleviton.com |
| | *Counsel for Plaintiff* |

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS